UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

HARI COHLY                                                                    PLAINTIFF

v.

Civil Action No. ___3:19-cv- 597-HTW-LRA___

MISSISSIPPI INSTITUTIONS OF
HIGHER LEARNING, JACKSON
STATE UNIVERSITY, WILLIAM B.
BYNUM, JR., LYNDA BROWN-
WRIGHT, WILBUR WALTERS, JR.,
RAMZI M. KAFOURY, and RICHARD
A. ALO                                                                     DEFENDANTS

## COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES
### (Jury Trial Demanded)

Hari Cohly was a tenured professor at Jackson State University. The university and the other defendants denied him due process in his suspension and termination, the university breached his employment contract, and certain individual defendants maliciously interfered with his employment contract. The plaintiff files this complaint for recovery of damages and injunctive relief under 42 U.S.C. § 1983, declaratory relief pursuant to 28 U.S.C. § 2201, and for damages and injunctive relief under state law. In support of his claims, the plaintiff states:

### Parties

1. The plaintiff Hari Cohly (Dr. Cohly) is an adult citizen of Mississippi who resides at 506 Taylor Street, Jackson, Mississippi 39216.

2. Mississippi Institutions of Higher Learning (IHL) is a department of the State of Mississippi which may be served with process of the Court through service upon Jim

Hood, Attorney General of Mississippi, 550 High Street, Suite 1200, Jackson, Mississippi 39201.

3. Jackson State University (JSU) is an institution of the State of Mississippi which may be served with process of the Court through service upon Jim Hood, Attorney General of Mississippi, 550 High Street, Suite 1200, Jackson, Mississippi 39201.

4. William B. Bynum, Jr. (Dr. Bynum) is believed to be an adult citizen of Mississippi. He is sued in his official capacity as President of Jackson State University and in his individual capacity. He may be served with process of the Court at his business address, Jackson State University, 1400 John R. Lynch Street, Jackson, Mississippi 39217.

5. Lynda Brown-Wright (Dr. Brown-Wright) is believed to be an adult citizen of Mississippi. She is sued in her official capacity as Provost and Vice President for Academic Affairs of Jackson State University. She may be served with process of the Court at his business address, Jackson State University,1400 John R. Lynch Street, Jackson, Mississippi 39217.

6. Wilbur Walters, Jr. (Dr. Walters) is believed to be an adult citizen of Mississippi. He is sued in his individual capacity. He may be served with process of the Court at his business address, Jackson State University, 1400 John R. Lynch Street, Jackson, Mississippi 39217.

7. Ramzi M. Kafoury (Dr. Kafoury) is believed to be an adult citizen of Mississippi. He is sued in his individual capacity. He may be served with process of the Court at his business address, Jackson State University, 1400 John R. Lynch Street, Jackson, Mississippi 39217.

8. Richard A. Alo (Dr. Alo) is believed to be an adult citizen of Florida. He is sued in his individual capacity. He may be served with process of the Court at his business address,

Florida Agricultural and Mechanical University, 1601 South Martin L. King, Jr.

Boulevard, Tallahassee, Florida 32307

### Jurisdiction and Venue

9.  This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. §

    1331 as this action involves claims arising under the Constitution and laws of the United

    States. Further, the Court has jurisdiction over the plaintiff's claim for declaratory relief

    under 28 U.S.C. § 2201. The Court may exercise supplemental jurisdiction over the

    plaintiff's state law claims under 28 U.S.C. § 1367.

10. This district is an appropriate venue for this action pursuant to 28 U.S.C. § 1391(a)(2)

    because a substantial part of the events or omissions giving rise to this action occurred

    within this district.

### Facts

11. The plaintiff Dr. Cohly was an associate professor in the Department of Biology in the

    College of Science, Engineering and Technology (CSET) at Jackson State University. He

    began employment with JSU in 2005. The plaintiff received tenure in 2011.

12. On January 16, 2015, JSU placed Dr. Cohly on administrative leave upon the

    recommendation of the defendant Dr. Alo. At the time, Dr. Alo was the CSET dean. Per

    JSU's executive director of human resources, Dr. Cohly would be on leave "pending the

    outcome of [Dr. Alo's] investigation regarding violation of protocol and procedures by

    conducting unapproved research and utilizing unauthorized student worker(s) to assist in

    this research."

13. Upon information and belief, Dr. Alo's initiation of the investigation and recommendation that Dr. Cohly be placed on administrative leave was based on charges asserted by the defendant Dr. Kafoury, the interim chair of the Department of Biology.

14. Dr. Cohly had previously objected to Dr. Kafoury's appointment as interim chair of his department and had questioned Dr. Kafoury's qualifications for the position.

15. Dr. Kafoury exhibited contempt toward Dr. Cohly which appeared to arise from professional jealousy. Dr. Cohly had achieved far greater success that Dr. Kafoury in obtaining grants, patents, and outside funding for research.

16. Under Dr. Kafoury's leadership, the biology department provided Dr. Cohly with substandard laboratory facilities.

17. Dr. Kafoury's personal animus against Dr. Cohly was further illustrated by the former's obstruction of Dr. Cohly's request for FMLA leave to care for his ailing mother.

18. Dr. Kafoury also made demeaning comments based on Dr. Cohly's national origin.

19. Dr. Cohly received no notification of Dr. Kafoury's and Dr. Alo's charges of misconduct and investigation despite JSU's policies and procedures requiring written notice of such charges to tenured professors.

20. On May 8, 2015, Dr. Kafoury wrote Dr. Cohly notifying him of Dr. Kafoury's decision to recommend Dr. Cohly's termination "for failure to obtain Institutional Review Board and Biosafety Committee approval for research you were conducting at Jackson State University." Dr. Kafoury contended—without substantiation—that Dr. Cohly had performed research involving human urine, which research would require approval of JSU's Institutional Review Board and Biosafety Committee (IRB).

21. Dr. Kafoury conducted no investigation to substantiate or refute the charges of misconduct against Dr. Cohly instead relying upon the allegations of an undergraduate student who had assisted Dr. Cohly with some of his research.

22. Neither Dr. Kafoury nor Dr. Alo had substantive evidence that Dr. Cohly failed to obtain IRB approval for any research requiring such approval.

23. Dr. Cohly exercised his right as a tenured professor to appeal Dr. Kafoury's recommendation and to request a hearing before the University Faculty Personnel Committee.

24. JSU did not convene a hearing of the University Faculty Personnel Committee until April 19, 2018—over three years after Dr. Cohly had been placed on administrative leave.

25. During the April 19, 2018 hearing before the University Faculty Personnel Committee, Dr. Alo and Dr. Kafoury alleged that Dr. Cohly admitted to performing unauthorized research without IRB approval. Dr. Cohly denied the allegation.

26. During this hearing, Dr. Kafoury admitted that he believed Dr. Cohly had fabricated his mother's illness in his previous request for FMLA leave.

27. On April 23, 2018, the University Faculty Personnel Committee issued a memorandum setting forth the committee's finding that Dr. Cohly had satisfactorily substantiated his position. The committee recommended that JSU reinstate Dr. Cohly.

28. Over three months later, on August 2, 2018, Dr. Bynum, JSU President, wrote Dr. Cohly informing him that Dr. Bynum rejected the recommendation of the University Faculty Personnel Committee that Dr. Cohly be reinstated. Dr. Bynum's letter of said date stated, "I will instead accept the recommendation of the Interim Dean of the College of CSET

[sic] to terminate your employment with Jackson State University." Dr. Walters was the Interim Dean of CSET at that time.

29. Neither Dr. Bynum nor Dr. Walters had substantive evidence that Dr. Cohly failed to obtain IRB approval for any research requiring such approval. Moreover, neither Dr. Bynum nor Dr. Walters had substantive evidence of *any reason* to terminate Dr. Cohly for cause.

30. Dr. Cohly appealed Dr. Bynum's determination to IHL by letter of October 4, 2018. On March 29, 2019, IHL informed Dr. Cohly that it had rejected his request for review and had approved his termination.

31. JSU never provided Dr. Cohly formal notice of his termination.

32. Since JSU placed Dr. Cohly on administrative leave over four years ago, it has been impossible for him to engage in university-based research.

33. Since the beginning of his administrative leave, JSU has barred Dr. Cohly from its campus, and Dr. Cohly has been unable to collect his books, instruments, electronics, awards, personal photographs, and supplies that he bought with his own money from his office and lab.

34. Among other consequences, Dr. Cohly lost the opportunity to commercialize a patent he holds for a rust removal process. In Dr. Cohly's absence, JSU has taken no efforts to commercialize the patent.

35. Dr. Cohly is a proficient and successful grant writer. He would have secured grants and would have been promoted as a full tenured Professor. He was deprived of upward

mobility in the ranks of academic arena and lost financial compensation which he would

have obtained from the granting agencies.

36. Since his termination, Dr. Cohly has suffered financial loss through the loss of his salary

and employee benefits including medical and dental insurance.

37. Dr. Cohly's termination has diminished the value of his account with the Public

Employment Retirement System and has resulted in a decrease in the benefits payable

from PERS.

38. The defendants' actions as detailed above have caused professional, reputational, and

financial harm to Dr. Cohly and have resulted in his severe emotional distress. Dr.

Cohly's suspension and termination have also harmed Dr. Cohly's physical health.

**COUNT ONE: CLAIMS UNDER 42 U.S.C. § 1983 FOR DENIAL OF DUE PROCESS**

39. Dr. Cohly had liberty and property interests in his continued employment with JSU,

which interests are protected by the due process rights guaranteed under the Fourteenth

Amendment.

40. The defendants denied Dr. Cohly procedural due process and deprived him of his

Fourteenth Amendment rights by delaying his initial hearing before the University

Faculty Personnel Committee for over three years.

41. The defendants further deprived Dr. Cohly of procedural due process by allowing Dr.

Bynum to reject the findings of the University Faculty Personnel Committee and override

its recommendation to reinstate Dr. Cohly without a further hearing and without any

substantive evidence. Dr. Bynum's actions negated any due process that had been

afforded by the University Faculty Personnel Committee hearing.

42. The defendants denied Dr. Cohly substantive due process and deprived him of his Fourteenth Amendment rights by terminating his employment without cause and without any substantive evidence that would support a termination for cause.

43. The defendants' actions resulted in financial, reputational, and emotional harm to Dr. Cohly.

44. The professional and reputational harm to Dr. Cohly can be remedied only by his reinstatement to his position as a tenured professor at JSU. He is therefore entitled to injunctive relief against IHL, JSU, and the individual defendants in their official capacities ordering his reinstatement.

45. Dr. Cohly is entitled to monetary damages against the individual defendants in their individual capacities to compensate him for the deprivation of his constitutional rights.

**Count Two: Breach of Contract**

46. As a tenured professor, Dr. Cohly had contractual rights securing his continued employment by JSU and termination only upon a finding of cause for the same.

47. JSU breached Dr. Cohly's employment contract by terminating his employment without cause and without any substantive evidence of cause for termination.

48. The professional and reputational harm to Dr. Cohly caused by the breach of contract can be remedied only by his reinstatement to his position as a tenured professor at JSU. He is therefore entitled to injunctive relief against IHL, JSU, and the individual defendants in their official capacities ordering his reinstatement.

49. Alternatively, Dr. Cohly is entitled to all categories of contractual monetary damages available under the law from JSU.

### Count Three: Declaratory Judgment

50. Dr. Cohly incorporates the allegations of all preceding paragraphs as if fully set forth in this count.

51. Dr. Cohly is entitled to declaratory judgment, pursuant to 28 U.S.C. § 2201, that the actions of IHL, JSU, and the individual defendants in their official capacities violated his Fourteenth Amendment rights and breached his employment contract with JSU.

### Count Four: Intentional Interference with Contract

52. As a tenured professor, Dr. Cohly had contractual rights securing his continued employment by JSU and termination only upon a finding of cause for the same.

53. Dr. Cohly's suspension and termination arose from personal animus on the part of Dr. Kafoury, whose appointment as interim chair of JSU's department of biology had been questioned by Dr. Cohly.

54. Drs. Bynum, Alo, and Walters acquiesced to and assisted Dr. Kafoury in securing Dr. Cohly's termination.

55. The actions of Drs. Kafoury, Bynum, Alo, and Walters constituted intentional and malicious interference with Dr. Cohly's employment contract with JSU.

56. Dr. Cohly is therefore entitled to compensatory and punitive damages against Drs. Kafoury, Bynum, Alo, and Walters.

WHEREFORE, the plaintiff Hari Cohly seeks judgment as follows:

1. Injunction against IHL, JSU, and the defendants in their official capacities ordering Dr. Cohly's reinstatement to his tenured position at JSU, promotion to full professor,

correction of his personnel records to show Dr. Cohly was guilty of no misconduct, and

transfer of JSU's interest in the patent for the rust removal process to Dr. Cohly.

2.  Declaratory judgment against IHL, JSU, and the defendants in their official capacities

that these defendants violated Dr. Cohly's Fourteenth Amendment and contractual

rights.

3.  Judgment against the individual defendants named in their individual capacities for

compensatory damages for violation of Dr. Cohly's Fourteenth Amendment rights and

malicious interference with his employment contract.

4.  Judgment for contractual damages against JSU.

5.  Judgment for punitive damages against Dr. Bynum, Walters, Alo, and Kafoury in their

individual capacities.

6.  Judgment for all costs and expenses of this action including attorney fees under 42 U.S.C.

§ 1988.

7.  Judgment for any other injunctive, declaratory, or monetary relief available under law and

supported by the evidence whether specifically requested above.

Dated: August 22, 2019.

Respectfully submitted,

HARI COHLY

By:     /s/ James M. Priest, Jr.              ,
His Attorney

Of Counsel:

James M. Priest, Jr., MSB # 99352
GILL, LADNER & PRIEST, PLLC
344 Highway 51, Second Floor
Ridgeland, MS 39157
(601) 352-5700
jamie@glplawfirm.com